**2025 IL 129695**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 129695)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
ANGEL CLASS, Appellee.

*Opinion filed August 28, 2025.*

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Overstreet and Holder White concurred in the judgment and opinion.

Justice Cunningham concurred in part and dissented in part, with opinion, joined by Justice O'Brien.

Justice Neville took no part in the decision.

**OPINION**

¶ 1    At issue in this case is whether, in a postconviction proceeding, an appellate court can, *sua sponte*, order reassignment to a new circuit court judge on remand

for reasons other than bias, potential bias, or prejudice on the part of the prior circuit court judge. For the following reasons, we find that the appellate court cannot do so.

¶ 2                                   BACKGROUND

¶ 3       Following a bench trial, petitioner Angel Class was convicted of first degree murder while armed with a firearm (720 ILCS 5/9-1(a)(1) (West 2000)), as well as one count of aggravated discharge of a firearm (*id.* § 5/24-1.2(a)(2)). The Cook County circuit court sentenced petitioner to 20 years' imprisonment on the charge of first degree murder, along with a 25-year sentencing enhancement because the murder was committed using a firearm. Petitioner was also sentenced to a concurrent term of five years' imprisonment on the charge of aggravated discharge of a firearm.

¶ 4       The facts of this case are fully set forth in the appellate court's opinion (2023 IL App (1st) 200903) and will be repeated here only as necessary to give an overview of the history of this case and to address the issues in this case. The victim, Tony Koniewicz, was killed in a drive-by shooting. Petitioner was a member of the Satan Disciples gang, and Koniewicz was a member of the C-notes gang. At petitioner's trial, Heather Ambrose testified for the State that she was driving defendant and Elijah Salazar around when petitioner leaned out of her passenger side window and fired a gun into the car next to them, firing until the gun's cartridge was empty. Gerard Racasi, a member of the C-notes gang, also testified for the State. Racasi stated that he was a member of the C-notes gang and was in the front passenger seat of Koniewicz's car during the shooting. Racasi heard 9 or 10 shots fired but did not see who had fired the shots because he had ducked down in the seat. Two police officers and one detective also testified concerning their investigation of the shooting and the arrest of petitioner.

¶ 5       Milton Correa testified on behalf of petitioner that he knew Elijah Salazar from the neighborhood. Correa said that Salazar discussed the shooting of Koniewicz with him during a drug transaction. The trial court sustained a hearsay objection to the specifics of that conversation.

¶ 6        Petitioner testified that he was a member of the Satan Disciples and that he knew Salazar and Ambrose, but he stated that he had not been involved in the murder of Koniewicz. Petitioner testified that he was home with his family on the night of the shooting.

¶ 7        The Appellate Court, First District, affirmed petitioner's convictions on direct appeal. *People v. Class*, 363 Ill. App. 3d 1193 (2006) (table) (unpublished order under Illinois Supreme Court Rule 23). This court denied petitioner's petition for leave to appeal the appellate court's decision. *People v. Class*, 219 Ill. 2d 572 (2006) (table). The United States Supreme Court denied *certiorari*. *Class v. Illinois*, 549 U.S. 870 (2006).

¶ 8        Petitioner then filed a *pro se* postconviction petition alleging ineffective assistance of trial counsel in failing to investigate and secure the testimony of alibi witnesses and eyewitnesses to the shooting. Petitioner also claimed that he was denied his sixth amendment right to confront and cross-examine Salazar, who testified before the grand jury but did not testify at trial. Petitioner argued that his trial counsel was ineffective for failing to investigate or call two unspecified witnesses who would have testified that petitioner was not the shooter. In support of this claim, petitioner attached a Chicago Police Department general progress report referencing an unidentified woman's statement to Clara Rivera that the shooter was "Rey" and that the victim was shot in the street as he exited an alley on foot.

¶ 9        Petitioner also alleged that trial counsel was ineffective in failing to call his mother, his stepfather, his two sisters, his brother, his nephew, and his child's mother as alibi witnesses who would have testified that petitioner was at his mother's house on the night of the murder. Petitioner attached to his petition affidavits from all family members except his nephew.[1] The affiants all averred

---

[1]The trial court's order dismissing petitioner's *pro se* postconviction petition stated that petitioner had submitted affidavits of his mother, stepfather, two sisters, his brother, and his child's mother. The common-law record compiled for the appeal of petitioner's *pro se* postconviction petition contained only the affidavits of petitioner's mother and one sister. The appellate court, therefore, stated in its order that petitioner had submitted only two affidavits in support of his petition. In petitioner's successive postconviction petition, at issue in this case, petitioner again renewed his alibi witness claim and asserted that his six family members should have been called as witnesses. The assistant public defender

that petitioner was home on the night of the murder. Petitioner also filed a supplemental *pro se* postconviction petition, seeking his trial transcripts.

¶ 10    The trial court dismissed both of petitioner's *pro se* postconviction petitions at the first stage, noting that petitioner failed to submit an affidavit from the unidentified witnesses and that the affidavits from petitioner's family members were not credible. The trial court determined that petitioner's claims of ineffective assistance of counsel were without merit.

¶ 11    Petitioner then appealed the dismissal of his postconviction petitions. Counsel was appointed to represent petitioner on appeal. The appellate court affirmed the trial court's dismissal of petitioner's postconviction petition but ordered that the mittimus should be corrected. *People v. Class*, 387 Ill. App. 3d 1177 (2008) (table) (unpublished opinion under Illinois Supreme Court Rule 23). This court denied leave to appeal the appellate court's order. *People v. Class*, 232 Ill. 2d 585 (2009) (table).

¶ 12    The United States District Court for the Northern District of Illinois subsequently denied petitioner's *pro se* petition for a writ of *habeas corpus* and did not certify any issues for appeal. *United States ex rel. Class v. Johnson*, No. 10 C 2819, 2010 WL 3273538 (N.D. Ill. Aug. 18, 2010).

¶ 13    On May 16, 2016, petitioner filed a *pro se* motion for leave to file a successive postconviction petition raising an actual innocence claim. Petitioner again alleged ineffective assistance of trial counsel, arguing that trial counsel failed to tell him the correct minimum sentence and failed to present the testimony of his family members that petitioner was home with them on the night of the murders. Petitioner also attached to his petition affidavits from William Sanchez, Christopher Stanley, Onyx Santana, Eugene Horton, and Robert Pasco, as newly discovered evidence in support of his actual innocence claim.

¶ 14    On July 29, 2016, the trial court advanced petitioner's petition to the second stage and appointed counsel for him. On August 14, 2018, petitioner filed a *pro se* "Supplement Post-Conviction Petition" moving for appointment of counsel and application to sue or defend as a poor person. The supplement again alleged

representing petitioner located the additional affidavits and submitted those affidavits as a supplemental group exhibit.

- 4 -

ineffective assistance of trial counsel. On June 19, 2019, petitioner's appointed counsel filed a Rule 651(c) certificate (Ill. S. Ct. R. 651(c) (eff. July 1, 2017)), along with the alibi affidavits from petitioner's family members. Appointed counsel also stated that she would not be adopting petitioner's August 14, 2018, *pro se* motion.

¶ 15    The State filed a motion to dismiss on June 24, 2019, arguing that petitioner failed to state a cognizable claim under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)) and failed to allege a substantial constitutional violation or show actual innocence. The trial court granted the State's motion to dismiss, stating that petitioner's claims of reasonable doubt and the alibis of his family members were *res judicata*. In addition, petitioner's claim of ineffective assistance of counsel was waived.

¶ 16    With regard to the five new affidavits submitted in support of petitioner's actual innocence claim, the trial court reviewed the content of the affidavits, finding that the affidavits failed under the cause and prejudice standard of review and failed to demonstrate actual innocence. The trial court therefore denied petitioner's request to file a successive postconviction petition and granted the State's motion to dismiss.

¶ 17    On appeal, the appellate court reversed and remanded. 2023 IL App (1st) 200903. The appellate court agreed with petitioner that he had made a substantial showing of actual innocence and therefore remanded the case for a third-stage evidentiary hearing. *Id.* ¶ 54. The appellate court stated that the trial court had erroneously employed a "piecemeal approach" to the evidence, assessing each affidavit individually and finding that none of the affidavits, standing alone, was sufficient to make the necessary showing of actual innocence. *Id.* ¶ 58. The appellate court noted that the trial court had entered its order less than one month after this court issued its decision in *People v. Robinson*, 2020 IL 123849, where this court "changed the calculus of what is required to advance a colorable claim of actual innocence," but the trial court failed to apply the *Robinson* calculus. 2023 IL App (1st) 200903, ¶ 59. In remanding the case to the trial court, the appellate court stated:

> "Finally, Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994) permits a reviewing court, in its discretion, to order that a case be assigned to a different judge on remand. See [*People v.*] *Serrano*, 2016 IL App (1st) 133493, ¶ 45;

*People v. Tally*, 2014 IL App (5th) 120349, ¶ 43. Pursuant to the discretion conferred upon us by this rule, we find that the interests of justice would be furthered by assigning this case to a different judge on remand."

¶ 18 The State then filed a petition for leave to appeal to this court, questioning whether the appellate court had the authority under Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994) to remand the case with directions to reassign the case to a different judge. The State noted that Rule 366(a)(5) governs the power of reviewing courts in civil appeals. The State noted that this court had never addressed whether Illinois Supreme Court Rule 615(b)(2) (eff. Jan. 1, 1967), which governs criminal appeals, provided the appellate court with such authority. The State also argued that, to the extent that the appellate court had the authority to direct the substitution of a judge in a criminal case, that authority was limited to circumstances where there was a showing of bias or actual prejudice. The State further contended that the appellate court's decision to *sua sponte* order the substitution of judge on remand, without a request to do so or input from the parties, conflicted with this court's precedent. The State did not appeal the appellate court's order reversing the dismissal of petitioner's successive postconviction petition and remanding the petition for a third-stage evidentiary hearing.

¶ 19 While the State's petition for leave to appeal was pending, this court entered an order remanding the case to the appellate court for the limited purpose of explaining the basis and rationale for the appellate court's decision to order reassignment in the case.

¶ 20 The appellate court filed a modified opinion in response to this court's order. 2023 IL App (1st) 200903. The appellate court noted that Rule 366(a)(5) has been interpreted to include the power to order that a case be assigned upon remand. *Id.* ¶ 86. In response to the State's argument that Rule 366(a)(5) applies only in civil cases, the appellate court found authority to reassign criminal cases upon remand in Rule 615(b)(2) (Ill. S. Ct. R. 615(b)(2) (eff. Jan. 1, 1967)). 2023 IL App (1st) 200903, ¶ 86.

¶ 21 The appellate court next rejected the State's claim that the only valid basis for reassignment on remand in a criminal case is a finding of bias or actual prejudice on the part of the trial judge. *Id.* ¶¶ 87-88. The appellate court cited this court's decisions in *People v. Jolly*, 2014 IL 117142, *People v. Heider*, 231 Ill. 2d 1 (2008),

and *People v. Dameron*, 196 Ill. 2d 156 (2001), as ordering reassignment upon remand based upon factors other than bias. 2023 IL App (1st) 200903, ¶ 88. For example, the *Heider* court remanded for resentencing before a new judge " 'in order to remove any suggestion of unfairness.' " *Id.* (quoting *Heider*, 231 Ill. 2d at 25). *Dameron* ordered reassignment upon remand for the same reason. *Dameron*, 196 Ill. 2d at 179. *Jolly* remanded for reassignment because the circuit court had permitted the State to participate in an adversarial fashion during a preliminary hearing pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984). *Jolly*, 2014 IL 117142, ¶ 46. The appellate court stated that *Heider*, *Dameron*, and *Jolly* suggested that this court has recognized that, in rare cases, factors other than bias may require reassignment at the trial level. 2023 IL App (1st) 200903, ¶ 88.

¶ 22    The appellate court further found the factors weighed by federal courts when they exercise reassignment powers under section 2106 of the United States Code (28 U.S.C. § 2106 (2018)) to be equally applicable under Rules 366(a)(5) and 615(b)(2) and determined that those factors weighed in favor of reassignment in this case. 2023 IL App (1st) 200903, ¶¶ 89-90. The appellate court concluded that the multiple errors committed by the trial judge in this case undermined its "confidence that this judge would be able to put out of her mind the findings that she made and that we found to be improper." *Id.* ¶ 91. In addition, the appellate court stated that, even if judicial bias is the only basis on which the court can order reassignment to a new judge on remand, reassignment on that ground was supported by the record, where the postconviction judge expressed a "hostility" to petitioner's claim. *Id.* ¶ 96.

¶ 23    Finally, the appellate court addressed the State's argument that it erred in ordering reassignment *sua sponte*. *Id.* ¶ 97. The appellate court agreed that a reviewing court should exercise its powers to raise unbriefed issues only sparingly but stated that "this was a very unusual case" and, "[w]hile reassignment was not briefed by the parties, the record before us made it necessary, in our view, for us to consider it on our own." *Id.* The appellate court stated that its ability to order reassignment on remand paralleled that of the federal courts and that the federal courts routinely exercised that power in criminal cases, both upon request and *sua sponte*. *Id.*

¶ 24 Following the filing of the appellate court's modified opinion in this case, this court allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2021).

¶ 25                                    ANALYSIS

¶ 26 On appeal, the State argues that the appellate court lacks the authority in criminal cases to order substitution of a circuit court judge absent a finding of prejudice or bias. The State further contends that the appellate court exceeded its authority when it *sua sponte* ordered substitution of the circuit court judge upon remand. With regard to Rules 366(a) (Ill. S. Ct. R. 366(a) (eff. Feb. 1, 1994)) and 615(b), the State now agrees that Rule 615(b)(1) authorized the appellate court to reverse the circuit court's judgment upon a finding of error and that Rule 366(a)(5) authorized the appellate court to remand the case to the circuit court for further proceedings. The State argues, however, that the appellate court could only order reassignment to a new judge on remand upon a finding of bias or prejudice.

¶ 27 Because the issues in this case concern the appellate court's authority to order substitution of judge on remand, our review is *de novo*. *People v. Webster*, 2023 IL 128428, ¶ 16.

¶ 28 This court has not addressed whether Rule 615(b) authorizes an appellate court to order reassignment to a new judge upon remand. The appellate court in this case, as well as in similar cases, has cited both Rule 366(a)(5) and Rule 615(b) in finding that it had the discretion to do so. See 2023 IL App (1st) 200903, ¶¶ 86, 98; *People v. Campbell*, 2023 IL App (1st) 220373, ¶ 67; *People v. Gathing*, 2023 IL App (3d) 230491, ¶ 22.

¶ 29 Rule 366(a), however, does not apply in this case. In *People v. Young*, 124 Ill. 2d 147, 152 (1988), the court explained:

"The authority of reviewing courts in criminal cases is set out in Rule 615(b) (107 Ill. 2d R. 615(b)). The authority of reviewing courts in civil cases is set out in Rule 366 (107 Ill. 2d R. 366). The authority in civil cases, as set out in Rule 366, is much broader and more specifically stated than is the authority of a reviewing court in criminal appeals as stated in Rule 615(b). The authority to

- 8 -

enter an order of remandment in criminal cases is not specifically granted in Rule 615(b), but is in Rule 366. It is obvious, however, that a reviewing court has such authority in criminal cases when used in connection with other authority specifically stated in Rule 615(b)."

¶ 30    This court recently reiterated that Rule 615(b) sets out the authority of reviewing courts in criminal cases. *Webster*, 2023 IL 128428, ¶ 27. *Webster* stated that "Rule 366(a) is not intended to be used as a mechanism in criminal cases to provide relief that otherwise would not be appropriate under Rule 615(b)." *Id.* ¶ 33.

¶ 31    Accordingly, we look to Rule 615(b) to determine whether the appellate court had the authority to order reassignment to a new judge upon remand. The plain language of Illinois Supreme Court Rule 615(b)(2) (eff. Jan. 1, 1967) provides that, on appeal, the reviewing court may "modify any or all of the proceedings subsequent to *** the judgment or order from which the appeal is taken." We find that the authority to "modify any or all of the proceedings subsequent to *** the judgment or order from which the appeal is taken" includes the authority to modify the subsequent proceedings by directing that a new judge be assigned on remand.

¶ 32    The question then is under what circumstances may an appellate court *sua sponte* order that a new judge be assigned upon remand of the case. Our analysis of this issue is informed and limited by the posture of this case. The case is before this court on petitioner's successive postconviction petition. A proceeding under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)) is not an appeal but, rather, is a collateral attack on a judgment of conviction. *People v. Hall*, 157 Ill. 2d 324, 330 (1993). The purpose of a postconviction proceeding is to resolve allegations that constitutional violations occurred at trial, allegations that have not been and could not have been previously adjudicated. *Id.* The postconviction petitioner carries the burden to establish a substantial deprivation of his rights under the United States or Illinois Constitution. *Id.* at 331.

¶ 33    This court has held that a petitioner in a postconviction proceeding is not entitled to the full panoply of constitutional rights that accompany an initial criminal prosecution. *People v. Wright*, 189 Ill. 2d 1, 17 (1999). Indeed, there is no absolute right to substitution of judge at a postconviction proceeding. *People v. Steidl*, 177 Ill. 2d 239, 264 (1997); *Hall*, 157 Ill. 2d at 331.

¶ 34    This does not leave a postconviction petitioner seeking substitution of judge without recourse. A postconviction defendant is entitled to due process. *Wright*, 189 Ill. 2d at 17. A basic requirement of due process is a fair trial in a fair tribunal. See *Steidl*, 177 Ill. 2d at 264; *Hall*, 157 Ill. 2d at 331. This court has stated that "[f]airness at trial requires not only the absence of actual bias but also the absence of the probability of bias." *People v. Hawkins*, 181 Ill. 2d 41, 50 (1998). Thus, no person may judge a case in which he or she has an interest in the outcome. *Id.* A party is denied due process in " '[e]very procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the state and the accused.' " *Id.* at 51 (quoting *Tumey v. Ohio*, 273 U.S. 510, 532 (1927)).

¶ 35    The due process requirement of a fair trial in a fair tribunal is relevant when faced with the facts before us in this case—where an appellate court seeks to *sua sponte* reassign a trial judge on remand from an appeal of postconviction proceedings. The appellate court raised the issue *sua sponte* on the basis that "this was a very unusual case." 2023 IL App (1st) 200903, ¶ 97. This court has cautioned reviewing courts that, even though a reviewing court has the power to raise unbriefed issues, it should refrain from doing so when raising those issues "would have the effect of transforming the court's role from that of jurist to advocate." *People v. Givens*, 237 Ill. 2d 311, 328 (2010). Quoting *Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008), *Givens* stated:

> " 'In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present. To the extent courts have approved departures from the party presentation principle in criminal cases, the justification has usually been to protect a *pro se* litigant's rights. [Citation.] But as a general rule, "[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." [Citation.]' " *Givens*, 237 Ill. 2d at 323-24.

¶ 36    Petitioner in this case was represented by counsel, so there was no concern with protecting a *pro se* litigant's rights. Petitioner's counsel did not ask the appellate court to assign the case to another judge on remand. In addition, while broadly describing the case as "very unusual," the appellate court did not find that reassignment was required to protect petitioner's due process right to a fair trial in a fair tribunal. Rather, the appellate court found that reassignment was required because "the multiple errors committed here compounded each other in a way that undermines our confidence that this judge would be able to put out of her mind the findings that she made and that we found to be improper." 2023 IL App (1st) 200903, ¶ 91. In other words, the appellate court did not believe that the circuit court, on remand, would apply the law as set forth in the appellate court's opinion. In doing so, the appellate court improperly crossed the line from neutral jurist to an advocate for petitioner.

¶ 37    Based upon this court's caselaw, an appellate court may *sua sponte* order judicial reassignment in subsequent postconviction proceedings in rare circumstances. See *People v. Thompkins*, 181 Ill. 2d 1, 22 (1998); see also *Steidl*, 177 Ill. 2d at 266. An appellate court may do so only when the record on appeal clearly reveals bias, the probability of bias, or prejudice on the part of the trial judge. See *Thompkins*, 181 Ill. 2d at 22. The record in this case presents no such rare circumstance.

¶ 38    This court has previously looked to the United States Supreme Court's description of judicial bias in addressing claims of judicial bias in this court. See *People v. Conway*, 2023 IL 127670, ¶ 26; *Eychaner v. Gross*, 202 Ill. 2d 228, 281 (2002). That description bears repeating. In *Liteky v. United States*, 510 U.S. 540, 555 (1994), the Court stated:

"First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. [Citation.] In and of themselves (*i. e.*, apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or

of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." (Emphases in original.)

¶ 39    The appellate court acknowledged that bias or prejudice was one important basis for reassignment but found that this court had concluded that reassignment was proper for reasons other than judicial bias in other cases. 2023 IL App (1st) 200903, ¶¶ 87-88. The appellate court found support for its reassignment order in this court's decisions in *Heider*, *Dameron*, and *Jolly*. *Id.* ¶ 88. The appellate court noted that the *Heider* and *Dameron* courts ordered reassignment to remove any suggestion of unfairness, while the *Jolly* court remanded and ordered reassignment due to the trial court's errors in conducting a *Krankel* hearing. *Id.*

¶ 40    The appellate court's reliance on *Heider*, *Dameron*, and *Jolly*, however, was misplaced. As the appellate court conceded, this court possesses broad supervisory authority that the appellate court does not possess. See *id.* Although this court did not expressly state in *Heider*, *Dameron*, and *Jolly* that it was ordering reassignment upon remand pursuit to its supervisory authority, it is well settled that this court's supervisory authority is "an ' "unequivocal grant of power." ' [Citation.] This authority extends to ' "the adjudication and application of law and the procedural administration of the courts." ' [Citation.]" *People v. Whitfield*, 228 Ill. 2d 502, 521-22 (2007). Although the appellate court has significant statutory powers of review in a criminal case, it does not possess the same inherent supervisory authority conferred on this court by article VI, section 16, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 16). *People v. Flowers*, 208 Ill. 2d 291, 308 (2003).

¶ 41    Moreover, the *Heider*, *Dameron*, and *Jolly* cases were before this court on direct appeal, while this appeal was from a successive postconviction proceeding. As discussed, an appellate court may *sua sponte* order judicial reassignment in a

successive postconviction proceeding where the record shows bias, the probability of bias, or prejudice on the part of the trial judge.[2]

¶ 42        Likewise, the appellate court erred in looking to federal caselaw discussing the factors federal appellate courts apply when exercising their reassignment powers under section 2106 of the United States Code. As stated in *United States v. Robin*, 553 F.2d 8, 10 (2d Cir. 1977), the federal courts apply the three-factor test in cases where "proof of personal bias requiring recusation" is absent. Accord *Manley v. Rowley*, 847 F.3d 705, 712 (9th Cir. 2017) ("We need not find actual bias on the part of the district court prior to reassignment."); *United States v. Awadallah*, 436 F.3d 125, 135 (2d Cir. 2006) ("With the exception of personal bias, this Court examines the [*Robin* three-factor test] to determine whether a case should be remanded to a different judge."). The federal three-factor test for cases asserting factors other than judicial bias, then, has no relevance in the instant case, as an appellate court in a postconviction proceeding may *sua sponte* order reassignment only where the record shows bias, the probability of bias, or prejudice on the part of the circuit court judge.

¶ 43        The appellate court stated that, even if judicial bias was the only basis upon which it could order reassignment on remand, its reassignment order was supported by the record. 2023 IL App (1st) 200903, ¶ 96. The appellate court found bias in the postconviction court's order because it found that the circuit judge exhibited "hostility" to petitioner's claims. *Id.* The appellate court found hostility where

> "the postconviction judge 'completely disregarded the testimony of [actual-innocence affiant] Christopher Stanley on the basis of what amounted to a credibility determination' (*supra* ¶ 75) and 'comb[ed] each one [of the petitioner's affidavits] for evidentiary infirmities and potential credibility issues' while 'minimizing any probative value [they] might contain' (*supra* ¶ 74)." *Id.*

¶ 44        The appellate court's description of the circuit court's purported bias, however, does not reveal an opinion that derives from an extrajudicial source, nor does it

---

[2]Given our finding that *Heider*, *Dameron*, and *Jolly* are inapposite, we need not address whether the appellate court correctly construed those opinions as holding that factors other than bias may support reassignment upon remand to the trial court in direct appeals, as that issue is not before us.

reveal a high degree of favoritism or antagonism as to make fair judgment impossible. Instead, the appellate court simply describes the circuit court's order dismissing petitioner's successive postconviction petition. This alone does not demonstrate judicial bias, as the fact that the circuit court "has ruled adversely to a party in either a civil or criminal case does not disqualify that judge from sitting in subsequent civil or criminal cases in which the same person is a party." *Eychaner*, 202 Ill. 2d at 280; *People v. Vance*, 76 Ill. 2d 171, 178 (1979).

¶ 45    Circumstances where this court has recognized that a trial court should recuse itself because of bias, the probability of bias, or prejudice in a postconviction proceeding include where the trial judge might be called as a material witness because he has knowledge outside of the record concerning the truth or falsity of allegations made (*People v. Wilson*, 37 Ill. 2d 617, 621 (1967)) or where the judge has a direct, personal, and substantial pecuniary interest in a criminal case (*People v. Del Vecchio*, 129 Ill. 2d 265, 274 (1989)). In addition, this court has considered whether "the case involves a possible temptation such that the average person, acting as judge, could not hold the balance nice, clear and true between the State and the accused." *Id.* at 275. Nonetheless, only under the most extreme cases would disqualification on the basis of bias or prejudice be appropriate by an appellate court *sua sponte* on appeal in a postconviction proceeding. *Id.*

¶ 46    None of the preceding circumstances is present in this case. The circuit court judge did not have knowledge outside the record of the truth or falsity of the allegations made, where the judge might be called as a material witness. The circuit court judge did not have a direct, personal, or pecuniary interest in the case. The case did not involve a possible temptation such that the average person, acting as judge, could not hold the balance nice, clear, and true between the State and petitioner. Despite the appellate court's conclusion that a finding of judicial bias was supported by the record, nothing in the record reveals an extreme case where disqualification on the basis of bias, the probability of bias, or prejudice was required on remand.

¶ 47    Instead of examining judicial bias within the framework of postconviction proceedings, the appellate court relied on *People v. Serrano*, 2016 IL App (1st) 133493, to find that judicial bias was present in this case. 2023 IL App (1st) 200903, ¶ 96. Here too, the appellate court's reliance was misplaced. Although *Serrano*

involved a petitioner requesting that the court assign his case to another judge on remand in a postconviction proceeding, the court did not analyze the petitioner's request under the caselaw applicable to postconviction claims of judicial bias. In fact, it is not entirely clear that the *Serrano* court ordered reassignment based on judicial bias.

¶ 48 The *Serrano* court agreed with the petitioner that it "would be essentially worthless" to send the case back to the same judge where the judge had ruled that no contrary verdict could ever stand and expressed a disregard for the evidence. *Serrano*, 2016 IL App (1st) 133493, ¶ 45. However, the *Serrano* court did not otherwise discuss whether those facts constituted judicial bias that would operate to deny the petitioner a fair hearing on his postconviction petition. See *id.* The court then stated that the

"[p]etitioner offered up an abundance of evidence to support his claim of actual innocence. The trial court turned a blind eye to much of the evidence and also refused to admit probative, admissible evidence that, when evaluated under the proper standard, is damning. Even where the court gave lip service to the standard it was supposed to apply, the court clearly did not adhere to that standard. The postconviction court gave the impression that it was flatly unwilling to consider the evidence offered by petitioner." *Id.*

¶ 49 The *Serrano* court's only reference to prejudice was that the petitioner "would be prejudiced were we not to assign the case to a new judge on remand." *Id.* In remanding, however, the court concluded that "the interests of justice would be best and most efficiently served by the case being assigned to a different judge on remand." *Id.*

¶ 50 The interests of justice is not the standard for an appellate court seeking to *sua sponte* reassign a judge on remand from an appeal in a postconviction case. As in *Serrano*, the entirety of the appellate court's analysis concerning judicial bias in this case was that the circuit court expressed "hostility" to petitioner's claim, completely disregarded the testimony of Christopher Stanley, and combed through the affidavits "for evidentiary infirmities and potential credibility issues" while "minimizing any probative value" the affidavits might contain. 2023 IL App (1st) 200903, ¶ 74. The appellate court then concluded that " 'the interests of justice

would be best and most efficiently served by the case being assigned to a different judge on remand.' " *Id.* ¶ 96 (quoting *Serrano*, 2016 IL App (1st) 133493, ¶ 45).

¶ 51     The appellate court's description of the circuit court's purported bias in this case at best points to legal error on the part of the circuit judge. The appellate court noted that the circuit court failed to apply the standard set forth in *Robinson*, 2020 IL 123849, an opinion filed less than one month before the circuit court entered its order (2023 IL App (1st) 200903, ¶ 59), and on that basis stated that it lacked confidence that the circuit court would view petitioner's petition as anything other than deficient (*id.* ¶ 92). We disagree. As discussed, *supra*, judicial rulings almost never constitute a valid basis for a claim of judicial partiality or bias. *Conway*, 2023 IL 127670, ¶ 26; *Eychaner*, 202 Ill. 2d at 281; *Liteky*, 510 U.S. at 555. To hold otherwise would arguably require reassignment anytime the appellate court reversed and remanded a circuit court's order for failing to follow applicable law. In this case, the circuit court's legal error in applying the wrong standard does not show a "high degree of favoritism or antagonism as to make fair judgment impossible" sufficient to support a finding of bias that would justify reassignment upon remand. See *Liteky*, 510 U.S. at 555. Nor do we find any support in the record indicating that the circuit court will fail to correct its legal error or fail to apply the *Robinson* standard on remand. The legal error described by the appellate court does not begin to approach the level of unfairness that denies a postconviction petitioner due process.

¶ 52     In the absence of a record showing bias, the probability of bias, or prejudice on the part of the judge in this postconviction proceeding, the appellate court erred in *sua sponte* ordering reassignment of this case to a different judge on remand to the circuit court. We therefore reverse the appellate court's order directing the presiding judge of the criminal division of the circuit court on remand to assign this case to a new judge for further proceedings. In addition, we overrule *Serrano* to the extent it found that an appellate court may *sua sponte* order reassignment of a case to a different judge on remand for reasons other than bias, the probability of bias, or prejudice on the part of the trial judge in a postconviction proceeding.

¶ 53                             CONCLUSION

¶ 54        For the foregoing reasons, we reverse the appellate court's judgment directing the presiding judge of the criminal division of the circuit court to assign this case to a new judge for further proceedings, and we remand to the circuit court.

¶ 55        Appellate court judgment affirmed in part and reversed in part.

¶ 56        Cause remanded.

¶ 57        JUSTICE CUNNINGHAM, concurring in part and dissenting in part:

¶ 58        I agree with the majority that, when the appellate court grants relief to a petitioner in a postconviction appeal, the appellate court may *sua sponte* order the case reassigned to a different circuit court judge on remand if, as an objective matter, it is shown there is actual bias, potential or probable bias, or prejudice on the part of the original judge. I disagree, however, with the majority's conclusion that that standard was not met in this case. I therefore respectfully dissent.

¶ 59                             BACKGROUND

¶ 60        Following a bench trial in the circuit court of Cook County, the petitioner, Angel Class, was convicted of first degree murder with a firearm and aggravated discharge of a firearm. The petitioner's convictions were affirmed on direct appeal. *People v. Class*, 363 Ill. App. 3d 1193 (2006) (table) (unpublished order under Illinois Supreme Court Rule 23). The petitioner thereafter filed a postconviction petition that was summarily dismissed by the circuit court. That dismissal was also affirmed on appeal. *People v. Class*, 387 Ill. App. 3d 1177 (2008) (table) (unpublished order under Illinois Supreme Court Rule 23).

¶ 61        The petitioner subsequently filed a successive postconviction petition that, among other things, raised a claim of actual innocence. The petitioner attached affidavits from several witnesses in support of his claim.

¶ 62 After advancing the petition to the second stage, the circuit court rejected the petitioner's actual innocence claim. The court examined the petitioner's affidavits and concluded they failed "to demonstrate actual innocence."

¶ 63 On appeal, the appellate court reversed the dismissal of the petitioner's successive postconviction petition and remanded the case to the circuit court for a third-stage evidentiary hearing. 2023 IL App (1st) 200903. The appellate court held that the circuit court had improperly considered each of the affidavits submitted by the petitioner in isolation rather than in the "holistic manner that the law requires" (*id.* ¶ 74) and that the circuit court had incorrectly determined that "none of the affidavits, standing alone, could make a substantial showing of actual innocence" (*id.* ¶ 61). The appellate court also found that the circuit court had improperly combed each affidavit "for evidentiary infirmities and potential credibility issues," which was inappropriate in a second-stage analysis. *Id.* ¶ 74. The appellate court concluded that, "[w]hen read together and weighed against the unusually scant trial evidence," the affidavits submitted by the petitioner raised serious questions about his guilt that undermined the appellate court's "confidence in his conviction." *Id.* ¶ 70. Finally, after reversing the dismissal of the petitioner's postconviction petition, the appellate court ordered, *sua sponte*, that the case be reassigned to a different judge on remand.

¶ 64 The State thereafter appealed to this court, challenging only the appellate court's order of reassignment and not the appellate court's reversal of the circuit court's dismissal of the petitioner's successive postconviction petition. This court retained jurisdiction of the case and remanded the matter to the appellate court with directions to explain its rationale for ordering reassignment to a different judge.

¶ 65 In a modified opinion filed following remand, the appellate court first noted that the State had conceded that Illinois Supreme Court Rule 615(b)(2) (eff. Jan. 1, 1967), which applies in postconviction appeals (see Ill. S. Ct. R. 651(d) (eff. July 1, 2017)), grants the appellate court the authority to order judicial reassignment in criminal cases on remand to the circuit court. 2023 IL App (1st) 200903, ¶ 86. Rule 615(b)(2) provides that the appellate court may "set aside, affirm, or modify any or all of the proceedings subsequent to or dependent upon the judgment or order from which the appeal is taken." Ill. S. Ct. R. 615(b)(2) (eff. Jan. 1, 1967).

¶ 66        The State contended, however, that the appellate court could only order reassignment under Rule 615(b)(2) if it first determined that the original circuit court judge was actually biased or prejudiced against the petitioner and that the appellate court's reassignment powers "extend no further than circumstances that would have justified a for-cause substitution of judge in the circuit court." 2023 IL App (1st) 200903, ¶ 87. The appellate court rejected this contention. Citing three cases from this court, *People v. Jolly*, 2014 IL 117142, ¶ 46, *People v. Heider*, 231 Ill. 2d 1, 25 (2008), and *People v. Dameron*, 196 Ill. 2d 156, 179 (2001), as well as numerous decisions from federal courts, the appellate court concluded that, "in rare cases," reassignment may be required even in the absence of actual bias. 2023 IL App (1st) 200903, ¶ 88. The appellate court determined that this was such a case. *Id.* ¶¶ 91-94.

¶ 67        The appellate court also went on to hold, in the alternative, that even if a showing of actual bias on the part of the judge was necessary to order reassignment, that standard was met here. *Id.* ¶ 96. Finally, the appellate court rejected the State's argument that it had erred in raising the issue of judicial reassignment *sua sponte*. *Id.* ¶ 97.

¶ 68        This appeal followed.


¶ 69                                ANALYSIS

¶ 70        Like the appellate court, the majority here holds that Rule 615(b)(2) grants the appellate court the authority to order that a case be reassigned to a different judge when a case is remanded to the circuit court for further proceedings. *Supra* ¶¶ 29-31 (citing *People v. Young*, 124 Ill. 2d 147, 152 (1988)).[3] The majority then holds that, in postconviction appeals, the appellate court may *only* order reassignment

---

[3]The majority suggests that Rule 615(b)(2) applies in this case because this is a criminal appeal. *Supra* ¶ 30 (noting that "Rule 615(b) sets out the authority of reviewing courts in criminal cases"). To be clear, postconviction proceedings are civil in nature, not criminal. *People v. Johnson*, 191 Ill. 2d 257, 270 (2000). Postconviction appeals are governed by Rule 615(b)(2), not because they are criminal in nature, but because there is another rule, Illinois Supreme Court Rule 651(d) (eff. July 1, 2017), that specifically states "[t]he procedure for an appeal in a post-conviction proceeding shall be in accordance with the rules governing criminal appeals."

when the record shows, as an objective matter, that there is actual bias, a potential or probability of bias, or prejudice on the part of the original judge. *Supra* ¶¶ 1, 37. The majority derives this standard from principles of due process. *Supra* ¶ 35 (stating that due process principles are "relevant" to determining the reassignment standard under Rule 615(b)(2)).

¶ 71　　Impartiality in a judge "is a basic requirement of due process" (*In re Murchison*, 349 U.S. 133, 136 (1955)), under both the federal and state due process clauses (U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 2). Impartiality, at a minimum, requires that a judge be free of actual bias. *Murchison*, 349 U.S. at 136. However, our system of law has always sought more than merely an absence of actual bias in its judicial officers and has, instead, "endeavored to prevent even the probability of unfairness" or bias. *Id.*

¶ 72　　To that end and to establish "an enforceable and working framework" for determining whether a judge may constitutionally participate in a judicial proceeding, the United States Supreme Court has adopted "an objective standard that, in the usual case, avoids having to determine whether actual bias is present." *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016). Under this standard, we ask "not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, 'the average judge in his position is "likely" to be neutral, or whether there is an unconstitutional "potential for bias." ' " *Id.* (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 881 (2009)). When a judge's participation in a case gives rise "to an unacceptable risk of actual bias" so as to endanger "the appearance of neutrality," then the judge's "participation in the case 'must be forbidden if the guarantee of due process is to be adequately implemented.' " *Id.* at 14 (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). This court, too, has noted that due process principles require the disqualification of a judge, even in the absence of any actual bias, where the judge's participation in the case "would create the appearance of partiality." *People v. Hall*, 157 Ill. 2d 324, 332 (1993).

¶ 73　　To ensure that these fundamental principles of due process are satisfied, the appellate court may order that a case be reassigned to another judge on remand to avoid both actual bias and the appearance or probability of bias. This is true regardless of whether the issue of reassignment is raised by one of the parties in the appeal. As the majority holds, the appellate court always has a constitutional duty

to order reassignment *sua sponte* when the original judge's participation would offend principles of due process. *Supra* ¶¶ 1, 37. Other courts have reached the same conclusion. See, *e.g.*, *Haines v. Liggett Group Inc.*, 975 F.2d 81, 98 (3d Cir. 1992) (noting that a federal circuit court of appeals may order judicial reassignment when necessary "to avoid both bias and the appearance of bias").

¶ 74   Importantly, in determining whether to order judicial reassignment, the appellate court will encounter situations that differ substantially from those faced by a circuit court when presented with a motion for recusal or substitution. The appellate court performs a different function than the circuit court, and this fact will necessarily affect the standard that the appellate court must use to determine whether reassignment is appropriate. As the United States Supreme Court observed in *Liteky v. United States*, 510 U.S. 540, 554 (1994), an appellate court ordering judicial reassignment may be governed by "a different standard" than the one applied to requests for recusal or substitution in the trial court simply because "there may be pragmatic reasons for a different standard." See *id.* (noting that the standard applied by the federal courts of appeal in ordering reassignment was "irrelevant" to determining the recusal or substitution standard applied in the trial court).

¶ 75   The most important situation that can prompt judicial reassignment by the appellate court, and one that would never be encountered in a motion for recusal or substitution brought in the circuit court, is when the circuit court has failed to obey the appellate court's mandate. Though rare, there are times when a circuit court refuses to follow the appellate court's directions after a case has been remanded, not because of personal feelings of favoritism or antagonism toward one of the parties or because of a conflict of interest, but because of a disagreement with the appellate court over the governing principles of law. See, *e.g.*, *People v. Sanchez-Segura*, 2024 IL App (3d) 240082-U, ¶ 11; *People v. Gurga*, 176 Ill. App. 3d 82, 84 (1988). The appellate court must be able to enforce its mandate in this situation. If it could not and the circuit court were free to disregard the appellate court's mandate without any concern as to whether the case could or would be reassigned, it would be both unfair to the litigant who prevailed in the appellate court and would completely undermine the authority of the appellate court.

¶ 76   Principles of due process can and do address these concerns. As the Supreme Court has noted repeatedly, "due process is flexible and calls for such procedural

protections as the particular situation demands." *Morrisey v. Brewer*, 408 U.S. 471, 481 (1972). " ' "[D]ue process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' " *Mathews v. Eldridge*, 424 U.S. 319, 334, (1976) (quoting *Cafeteria & Restaurant Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 895 (1961)). Rather, due process principles always take into account the nature of the judicial proceeding since " 'not all situations calling for procedural safeguards call for the same kind of procedure.' " *People v. Deleon*, 2020 IL 124744, ¶ 8 (quoting *Morrissey*, 408 U.S. at 481).

¶ 77 The State, in this case, fully recognizes this point and also fully recognizes that, when the appellate court orders a judicial reassignment to ensure compliance with its mandate, it is, in fact, applying basic principles of due process. As the State explains in its reply brief, judicial reassignment is warranted when a circuit court judge refuses to follow the appellate court's mandate because such an action shows bias or partiality on the part of the judge. As the State puts it, such an action shows that "the judge harbors a partiality toward a particular outcome." Stated otherwise, when the appellate court's reassignment authority is defined solely in terms of due process (as it has been in this case), the concept of judicial "bias" necessarily includes, in addition to notions of personal feelings of favoritism or antagonism toward a party and conflicts of interest, the idea that the circuit court judge is partial to a particular outcome.

¶ 78 Of course, the majority does not disagree with this proposition, and understandably so. It is self-evident that the appellate court must have the authority to enforce its orders through the process of judicial reassignment. It would be absurd to suggest otherwise. Under the due process standard adopted by the majority in this case, the concept of judicial "bias" necessarily includes those situations where the record shows, as an objective matter, that the circuit court is partial to a particular outcome.

¶ 79 As noted previously and as the majority correctly recognizes, principles of due process require the disqualification of a judge not only when he or she harbors an actual bias but also when, as an objective matter, " 'there is an unconstitutional "potential for bias." ' " *Williams*, 579 U.S. at 8 (quoting *Caperton*, 556 U.S. at 881). Because the concept of "bias" necessarily includes those situations where the circuit

- 22 -

court judge is partial to a particular outcome, this means that the appellate court has a constitutional duty to order reassignment *sua sponte* when, as an objective matter, there is a potential or probability that the original judge harbors a partiality toward a particular outcome. The appellate court's decision in *People v. Fields*, 2013 IL App (2d) 120945, provides a good illustration of the application of this principle.

¶ 80    In *Fields*, the trial court made an initial inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), to consider the defendant's *pro se* allegations of ineffective assistance of trial counsel. While conducting the inquiry, the court allowed the State to participate as an adversary, permitting the State to argue against, or otherwise rebut, each of the defendant's claims of ineffective assistance of counsel. *Fields*, 2013 IL App (2d) 120945, ¶¶ 22, 41. The *Fields* court held that this was error and that the State should be limited to a *de minimis* role in the preliminary *Krankel* inquiry, to reduce the risk that the inquiry would be transformed into an adversarial proceeding with both the State and the defendant's trial counsel opposing the defendant. *Id.* ¶ 40.

¶ 81    *Fields* then went on to find that the State's participation in the initial *Krankel* inquiry was not harmless and that the proper remedy was to remand the case for a new *Krankel* inquiry. *Id.* ¶ 42. This new inquiry, *Fields* held, was to be conducted before a different judge. *Id.* Notably, in ordering the case reassigned to a different judge, *Fields* did not make any findings that the original trial judge harbored personal feelings of favoritism or antagonism toward the parties or that the judge had any conflict of interest.

¶ 82    After *Fields* was decided, the appellate court decided a second case, *People v. Jolly*, 2013 IL App (4th) 120981, in which it took a different approach to addressing the State's adversarial participation in an initial *Krankel* inquiry. In that case, in contrast to *Fields*, the appellate court held that the State's participation in the *Krankel* inquiry was harmless beyond a reasonable doubt because the record showed that the defendant's underlying claims of ineffective assistance of counsel lacked merit. *Id.* ¶ 56.

¶ 83    This court subsequently granted the defendant's petition for leave to appeal in *Jolly* to resolve the conflict between that case and *Fields*. See *Jolly*, 2014 IL 117142, ¶ 1. After examining the two cases, this court rejected the approach taken in *Jolly* and approved the reasoning of *Fields* in its entirety, finding that *Fields*

"better comports with our *Krankel* jurisprudence when a circuit court erroneously permits the State's adversarial participation at the preliminary inquiry." *Id.* ¶ 38.

¶ 84 Further, and of importance here, this court also expressly held that the appellate court acted correctly in *Fields* when it reassigned the case to a different judge on remand to the circuit court. *Id.* ¶¶ 38, 46.[4] Reassignment was appropriate because, after the State participated in the first *Krankel* inquiry and the original trial judge had heard the arguments and ruled against the defendant, that judge was no longer "a neutral trier of fact" who could "initially evaluate [a defendant's] claims" to create "an objective record for review," which was the entire purpose of the initial *Krankel* inquiry. *Id.* ¶ 39. In other words, there was an objective probability that the original judge, having prejudged the issue and already expressed an opinion on the merits of the defendant's claims, would harbor a partiality toward a particular outcome on remand. This is the same due process standard recognized by the majority in this case and the same standard that continues to be followed by the appellate court in cases addressing the State's improper adversarial participation in an initial *Krankel* inquiry. See, *e.g.*, *People v. Jackson*, 2016 IL App (1st) 133741, ¶¶ 92-94; *People v. Robinson*, 2015 IL App (1st) 130837, ¶ 83; *People v. Flemming*, 2015 IL App (1st) 111925-B, ¶ 92.

¶ 85 The reassignment order in *Fields*, like a reassignment order in a case where the circuit court disobeys the appellate court's mandate, addresses a situation that would never be encountered in a motion for recusal or substitution brought in the circuit court. These situations, which involve cases that are remanded to the circuit court for further proceedings, are unique to the appellate court. The principles of due process recognized by the majority in this case resolve these situations, ensuring that the fairness and integrity of the judicial system can be preserved.

¶ 86 Applying the foregoing due process principles to this case, the majority concludes that the appellate court erred in ordering judicial reassignment. *Supra*

---

[4]The majority notes that, after reversing the appellate court's decision in *Jolly*, this court ordered judicial reassignment in that case and suggests that this reassignment was done under our supervisory authority. *Supra* ¶ 40. However, there is no question that the appellate court's reassignment order in the *Fields* case (which this court expressly approved) was *not* made under supervisory authority since, as the majority correctly points out, the appellate court does not possess that power. *Supra*, ¶ 40 (citing *People v. Flowers*, 208 Ill. 2d 291, 308 (2003)).

¶ 44. In doing so, however, the majority spends the bulk of its analysis addressing whether the circuit court judge in this case [5] harbored subjective feelings of antagonism or hostility toward the petitioner. *Supra* ¶¶ 43-50. The majority touches only briefly on whether, as an objective matter, there is a potential or probability that the original judge would harbor a partiality toward a particular outcome in this case. The extent of the majority's discussion of this point is its statement that there is no "support in the record indicating that the circuit court will fail to correct its legal error or fail to apply the [*People v. Robinson*, 2020 IL 123849,] standard on remand." *Supra* ¶ 51. This cursory analysis of the potential or probability of bias in this case is unpersuasive.

¶ 87        Although the appellate court in this case did find that the circuit court misapplied the actual innocence test under *Robinson*, 2020 IL 123849, ¶ 59, that fact did not form the basis for its conclusion that there was a probability of bias in this case. Indeed, the appellate court correctly noted that legal "error alone is almost never a sufficient basis for reassignment." 2023 IL App (1st) 200903, ¶ 91. Instead, the appellate court based its reassignment order primarily on the fact that, on remand, it was unlikely the judge "would be able to put out of her mind the findings that she made" regarding the petitioner's claim of actual innocence. *Id.*

¶ 88        The petitioner's claim of actual innocence in this case stems from his convictions for first degree murder with a firearm and aggravated discharge of a firearm. Those convictions were based largely on the testimony of a single witness. *Id.* ¶¶ 65-66. No other witness identified the petitioner as the shooter or provided circumstantial evidence, and no physical evidence connected him to the crimes. *Id.*

¶ 89        In the postconviction petition at issue here, the petitioner offered three new affidavits that implicated another individual as the shooter. *Id.* ¶¶ 70-73. At the second stage of the proceedings, the circuit court reviewed and discounted these affidavits, finding them either inadmissible or not credible. *Id.* ¶¶ 74-82. All these determinations were found to be error by the appellate court. *Id.* Further, in making these evidentiary assessments, the circuit court conducted what was essentially a third-stage postconviction inquiry, rejecting the petitioner's affidavits and his claim of actual innocence on its merits. As the appellate court observed, this type of

---

[5]Of note, the postconviction judge in this case did not preside over the petitioner's trial.

- 25 -

analysis was improper at the second stage of the proceedings, which requires the postconviction judge to accept as true all well-pleaded allegations not positively rebutted by the record. *Id.* ¶ 82.

¶ 90       In ordering reassignment based on the circuit court's mistaken evidentiary findings, the appellate court highlighted the difficulty in this case: in the absence of reassignment, the same judge who had already improperly considered and rejected the credibility of the petitioner's evidence would again have to exercise discretion and consider that very same evidence. Under these circumstances, any objective observer would "lack confidence that [the judge] would be able to view [the] petition as anything other than deficient." See *id.* ¶ 92. Indeed, an objective observer might reasonably conclude that remanding the case for a third-stage evidentiary hearing before the same judge would be a meaningless formality. Thus, because the original judge's continued participation would "endanger[ ] the appearance of neutrality," reassignment was necessary " 'if the guarantee of due process [was] to be adequately implemented.' " *Williams*, 579 U.S. at 14 (quoting *Withrow*, 421 U.S. at 47).

¶ 91       This case is similar to *Fields*. Just as in that case the circuit court improperly allowed the State to participate as an adversary during the initial *Krankel* inquiry and then made a premature assessment of the merits of the defendant's claims of ineffective assistance of trial counsel, so too in this case the circuit court improperly conducted a third-stage analysis during the second stage of the postconviction proceedings and then made a premature assessment of the credibility of the petitioner's affidavits. And, just as this court approved the reassignment order in *Fields* because the original judge, having prejudged the issue, was no longer "a neutral trier of fact" (*Jolly*, 2014 IL 117142, ¶ 39), so too is reassignment warranted in this case because the original judge has already considered and rejected the merits of the petitioner's claim. See, *e.g.*, *People v. Scullark*, 2024 IL App (1st) 220676-U, ¶ 90 (assigning a new judge on remand for second-stage, successive postconviction proceedings where the original judge made "premature credibility findings" at the leave-to-file stage); *People v. Smith*, 2022 IL App (1st) 201256-U, ¶ 111 (assigning a different judge on remand for a new suppression hearing "in light of the credibility determinations already made by the previous judge").

¶ 92        "The appearance of fairness is almost invariably undercut by a premature assessment of the strength of one party's case ***." *Adoption of Tia*, 896 N.E.2d 51, 57 (Mass. App. Ct. 2008). In my view, a reasonable, objective observer would have substantial doubts as to whether the judge in this case, having already determined that the affidavits submitted by the petitioner were not credible, could thereafter be impartial in assessing their truth in a third-stage evidentiary hearing. In reaching this conclusion I emphasize that I do not question the integrity of the circuit court judge or suggest any personal criticism of her. I am confident that, on remand, she would make every effort to remain fair and impartial in assessing the petitioner's claim of actual innocence. However, under the due process principles recognized by the majority in this case, both this court and the appellate court have a constitutional duty to preserve not only the reality but also the appearance of a neutral, impartial judiciary. Given the overwhelming importance of these principles, reassignment is appropriate.

¶ 93                                        CONCLUSION

¶ 94        I agree with the majority that the appellate court has a constitutional duty to order judicial reassignment *sua sponte* when, as an objective matter, there is a potential or probability that the original judge is biased, *i.e.*, that the judge harbors a partiality toward a particular outcome. I disagree, however, with the majority's determination that that standard was not met here. I would affirm the judgment of the appellate court ordering reassignment in this case. Accordingly, I respectfully dissent.

¶ 95        JUSTICE O'BRIEN joins in this partial concurrence, partial dissent.

¶ 96        JUSTICE NEVILLE took no part in the consideration or decision of this case.