2026 IL App (1st) 241368
Opinion filed March 13, 2026

Sixth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 94 CR 10738 |
| | ) | |
| ANGELO EVANS, | ) | The Honorable |
| | ) | Peggy Chiampas, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Presiding Justice C.A. Walker concurred in the judgment and opinion.
Justice Gamrath specially concurred, with opinion.

**OPINION**

¶ 1     A lawful sentence requires understanding the defendant as an individual, particularly young defendants. The law requires sentencing courts to account for how youth, trauma, and neurological development affect a young defendant's decision-making and capacity for rehabilitation.

¶ 2     Angelo Evans was 17 years old when he committed horrific crimes. He also had been shaped by years of severe abuse, neglect, and instability. After significant changes in juvenile-

sentencing law, this court remanded for resentencing. The sentencing court nonetheless reimposed the same 90-year sentence.

¶ 3    After a thorough review of the record, including transcripts of the original trial and both the sentencing and the resentencing hearing, we cannot affirm. The severity of the offense alone does not relieve a duty to follow the governing law. The sentencing court erred in applying the statutory framework required for juvenile sentencing. Those errors undermine confidence in the sentence. We therefore reverse and remand for a new sentencing hearing.

¶ 4                                    BACKGROUND

¶ 5    Angelo Evans received an aggregate sentence of 90 years in prison at his original sentencing hearing. Years later, significant changes in the law occurred as courts began to recognize the various ways in which youth impacts decision-making and the potential for rehabilitation. Following the guidance of *Graham v. Florida*, 560 U.S. 48 (2010), *People v. Buffer*, 2019 IL 122327, and the Unified Code of Corrections (Code) (730 ILCS 5/5-4.5-105 (West 2022)), this court ordered Evans resentenced in accordance with these changes. But the sentencing court imposed the same sentence.

¶ 6                                    Jury Trial

¶ 7    KRW, a family friend, testified about Evans sexually assaulting her and then attempting to kill her in the early hours of April 7, 1994. Evans came to her apartment requesting to make a phone call. KRW was with her 22-month-old. Once inside, Evans entered KRW's bedroom, attacked her, held her down, and raped her. He also placed his forearm around her neck until she lost consciousness.

¶ 8    On regaining consciousness, KRW found Evans stabbing her in the back with a knife. He

then poured rubbing alcohol on her, set her head on fire, and left the room. She attempted to escape, but Evans blocked the door. She managed to extinguish the flames before trying to call the police, but the cord had been cut.

¶ 9    After Evans left, KRW sought help from a neighbor. KRW sustained 14 stab wounds and first and second-degree burns on 80% of her face and 9% of her body. Both of her lungs were punctured. Before being taken to the hospital, she identified Evans.

¶ 10    Evans made several statements to the police. At first, he said KRW made sexual advances toward him, and when Evans refused to go further, she became angry, grabbed the knife, and stabbed herself. He later admitted to the stabbings and setting her on fire. In a second interrogation, he suggested that KRW had been interested in him and that he followed her into the bedroom, forced her to the bed, strangled her, and stabbed her. In a written statement, he claimed that when she said she would call the police to accuse him of rape, he took a knife from her, cut the phone wire, and stabbed and set her on fire.

¶ 11    The jury found Evans guilty of attempt first degree murder and aggravated criminal sexual assault.

¶ 12                              Sentencing

¶ 13    Evans faced a maximum of 90 years in prison. The trial court evaluated the presentence investigation report, and both parties presented evidence.

¶ 14    The State called two witnesses in aggravation. A youth officer testified that, at 12 years old and living in a group home, Evans and three older boys held down a 15-year-old boy while two of the boys fondled him. A detective recounted his arrest of Evans, about 16 years old at the time, for an armed robbery in which Evans admitted using a BB gun.

¶ 15    Evans presented past psychological reports conducted in 1986, 1988, 1989, and 1991, which he claimed reflected medical issues stemming from the abuse and neglect he had experienced during childhood. The State objected on relevance, noting Evans had been found fit for trial. As Evans attempted to argue his "severe psychological problems," the trial court upheld the State's objection.

¶ 16    The trial court found three factors in aggravation: (i) Evans's actions caused and threatened serious bodily harm, (ii) Evans had a history of delinquency, and (iii) a sentence was necessary to deter others. The court added that the attempt first degree murder was ruthless and heinous.

¶ 17    The trial court held that no statutory mitigating factors applied:

"I do not know whether this defendant has any rehabilitative potential. He is a young person. His actions in this case in my opinion epitomize the results of what is occurring in our society due to the breakdown of the family. However, that does not excuse nor justify these actions."

¶ 18    The court imposed a total of 90 years, consisting of 60 years for the attempt first degree murder and 30 years for the aggravated criminal sexual assault.

¶ 19                                    Direct Appeal

¶ 20    On appeal, Evans contended that his 90-year aggregate sentence was excessive. This court affirmed the sentence, finding the trial court did not abuse its discretion. *People v. Evans*, No. 1-96-3368 (1997) (unpublished order under Illinois Supreme Court Rule 23).

¶ 21                                 Collateral Proceedings

¶ 22    In 2001, Evans filed a postconviction petition, alleging that his sentence was unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The trial court dismissed it,

- 4 -

and this court affirmed. *People v. Evans*, 1-01-1806 (2002) (unpublished order under Illinois Supreme Court Rule 23).

¶ 23   In 2009, he sought relief from judgment under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2008)), raising issues unrelated to his sentence. The trial court again dismissed, and this court affirmed. *People v. Evans*, 1-09-2183 (2011) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 24                      Successive Postconviction Proceedings

¶ 25   In 2014, Evans filed a successive postconviction petition, arguing that his aggregate 90-year sentence violated the eighth amendment (U.S. Const., amend. VIII) because the sentence was tantamount to a term of life without parole for crimes committed as a juvenile. He alleged that *Miller v. Alabama*, 567 U.S. 460, 465 (2012), applied retroactively to cases on collateral review and he had shown cause and prejudice.

¶ 26   The court denied leave to file, and initially, this court affirmed. *People v. Evans*, 2017 IL App (1st) 143562. But the supreme court intervened. See *People v. Evans*, No. 122701 (Ill. Nov. 24, 2021) (supervisory order). Ultimately, we granted a summary motion in Evans's favor, vacated his sentences, and remanded for a new sentencing hearing.

¶ 27                              2024 Resentencing

¶ 28   At the 2024 resentencing, the State argued that "eligibility for parole removes his new sentence from the penumbra of *Miller*, *Buffer*, *etc.*" See *Buffer*, 2019 IL 122327, ¶ 42. The State cited the infractions Evans committed while in the Department of Corrections, his past contacts with the legal system, and the circumstances of the offense to argue that Evans should receive the same sentence. The State did not cite or discuss the statutory mitigating factors under section 5-

4.5-105(a) of the Code (730 ILCS 5/5-4.5-105(a) (West 2024)).

¶ 29    Evans's memo cited the 12 statutory mitigating factors under section 5-4.5-105 of the Code (*id.*), noting, in part, Evans's involvement in the child welfare system, past mental health evaluations, and expressions of remorse. It also noted that he had served 30 years in prison so far.

¶ 30    Evans appended a 2023 mitigation report detailing a traumatic upbringing, including his parents' alcohol consumption, which may have caused fetal alcohol syndrome, and neglect, which resulted in Evans living with family members and in residential and group homes. The report included portions of medical records that indicated depression between 1986 and 1991 and a diagnosis of post-traumatic stress disorder (PTSD) in 2018. The report included letters from Evans's family, a warden at Menard Correctional Center, a program manager at Precious Blood Ministry of Reconciliation, and his GED certificate. And it quotes Evans saying he "take[s] full responsibility for [his] actions," and "I know what I did was wrong and I can't say it enough [KRW] I am sorry."

¶ 31    At the resentencing hearing, the State called KRW, who, at age 50, discussed her ongoing struggles with trust, anger, self-esteem, and depression. She denied that she pursued Evans on the night of the offense, as Evans had suggested in the 2022 presentence investigation. She wished for Evans to spend the rest of his life in prison.

¶ 32    The State also presented exhibits, including a document showing that Evans was arrested four times as a juvenile for theft, possession of a controlled substance, criminal sexual abuse, and armed robbery of a jacket with a BB gun. In addition, Evans had a conviction for possession of a weapon in Cook County jail while awaiting trial. Finally, the State presented a Department of Corrections record showing 36 tickets, with the last one in 2006.

¶ 33    Evans called mitigation specialist Dr. Lillian Huang Cummins. She testified consistently with her report that Evans's abusive and neglectful upbringing spanned his time at home, under parental care, and in other homes; that his mother abused alcohol; and the possibility of fetal alcohol syndrome, though it was never diagnosed. Evans's mother relinquished her parental rights over Evans and his siblings when Evans was nine, after years of beatings and psychological torture. And he experienced physical and sexual abuse at the group homes. Besides a borderline intellectual disability, Evans had been depressed, suicidal, and suffered from posttraumatic stress disorder.

¶ 34    Dr. Cummins concluded that Evans lacked maturity and impulse control when he committed this offense at age 17. Likewise, while he was given a series of tickets during his first decade in prison, his brain was still developing. She testified that his disadvantaged childhood and fetal alcohol spectrum disorder, along with his youth, affected his decision-making on the night of the offense. She spoke of the positive changes Evans had made, including earning his GED, taking college classes, seeking therapy, working, and earning a place in a medium-security facility.

¶ 35    Evans presented the testimony of Fred Weatherspoon, who said that Precious Blood Ministry of Reconciliation could help him with housing, employment, and provide other programs and services to assist with reentry into society. Weatherspoon met Evans in prison.

¶ 36    Before imposing the sentence, the sentencing court announced it reviewed the "extensive trial transcripts as well as the evidence in this case." It considered the presentence investigation, "the extensive mitigation report," the testimony of witnesses, and the arguments of counsel. Finally, the sentencing court stressed it considered "all statutory and non-statutory factors in aggravation and mitigation, whether specifically mentioned or not."

¶ 37    As for the statutory factors in aggravation, the sentencing court found (i) Evans's conduct

caused serious harm, (ii) he had a history of prior delinquency, and (iii) the sentence would be necessary to deter others from committing the same offense.

¶ 38    In mitigation, the sentencing court considered Evans's age and unstable family, which was "outlined extensively in the mitigation report." The sentencing court asserted that Evans's eligibility for parole "removes" his new sentence from "the penumbra" of *Miller*, *Buffer*, and other cases.

¶ 39    The sentencing court then considered mitigation under section 5-4.5-105(a) of the Code (730 ILCS 5/5-4.5-105(a) (West 2022)), using an earlier version that had nine rather than 12 factors and was consistent with the State's argument.

¶ 40    As to age and impetuosity, the sentencing court noted that Evans was 17 years old and known to KRW and her family. It stressed how Evans used the excuse of an emergency to gain entry, sexually assault her, and "ignited her on fire to eliminate her as a witness." The sentencing court noted, "as argued by the State, [Evans] was never diagnosed with any kind of psychiatric or neurological disorder."

¶ 41    Moving on to outside pressure, this factor was "absent" because Evans "acted alone" and was "the sole perpetrator." The sentencing court stressed, "There was no familial pressure or any type of negative influence."

¶ 42    The third factor concerned Evans's family, home, educational, and social background. The sentencing court said that Evans's "home environment was an environment that no child should ever be subjected to." But "services***were available" to him, including KRW's family, who provided him with support, guidance, and a home.

¶ 43    For potential for rehabilitation, Evans had successfully attended programs and "has not

been [idle] during his incarceration," but the sentencing court pointed out the disciplinary tickets.

¶ 44   The sentencing court explained that it had already discussed the circumstances of the offense at the start of the hearing. Next, it found the degree of participation not mitigating because Evans had acted alone and the attack was premeditated. Concerning whether Evans could meaningfully participate in his defense and had prior contact with the criminal justice system, the judge observed that Evans had counsel at trial and had prior contact with the criminal justice system, though no prior adjudications.

¶ 45   For the ninth factor, expression of remorse, the sentencing court said Evans "chose not to make a statement, and it's his right not to," and acknowledged that he "indicated he was sorry" in the 2023 mitigation report. But in the 2022 presentence investigation, Evans blamed KRW for pursuing him and supposedly not letting him leave before the attack and, thus, Evans "has expressed no, in this [c]ourt's opinion, real remorse at all in this case."

¶ 46   The sentencing court concurred with the findings of the original trial judge: (i) "that the sentence is necessary to deter others from committing the same type of offense; (ii) "that [Evans'] actions were exceptionally brutal and heinous; (iii) "that he, in fact, caused severe bodily injury," and (iv) "that the sentence for the aggravated criminal sexual assault must be served consecutively to the attempt first degree murder."

¶ 47   Evans received a sentence of 90 years in prison. A motion to reconsider was denied.

¶ 48                                ANALYSIS

¶ 49   Evans raises both constitutional and statutory challenges. We resolve this appeal on statutory grounds alone. Because the sentencing court failed to comply with section 5-4.5-105(a)

of the Code (730 ILCS 5/5-4.5-105(a) (West 2024)), resentencing is required. We, thus, do not reach his claims under the Illinois and federal constitutions.

¶ 50                                  Plain Error

¶ 51    Evans seeks a review based, in part, on the plain-error doctrine, arguing the sentencing court's errors undermined the framework of the resentencing hearing. The State responds that no error occurred because the sentencing court "implicitly" considered each mitigating factor. We disagree.

¶ 52    To preserve an issue for appeal, a party must object at trial and include the objection in a posttrial motion. *People v. Lewis*, 234 Ill. 2d 32, 40 (2009). But we may address unpreserved errors when (i) the evidence is closely balanced, or (ii) the alleged error affected the fairness of the trial and challenged the integrity of the judicial process. *People v. Naylor*, 229 Ill. 2d 584, 602-03 (2008); see generally *People v. Herron*, 215 Ill. 2d 167, 180 n.1 (2005) ("The plain-error test *** is more aptly described as a standard to help a reviewing court determine when to excuse forfeiture.").

¶ 53    Plain error review begins by asking whether an error occurred. *People v. Johnson*, 2024 IL 130191, ¶ 44. If an error is identified, we then must determine if Evans's assertion meets the second prong of the plain-error doctrine. *Id.* ¶¶ 49-50. The burden rests with Evans. *Id.* ¶ 43. We review this ultimate issue *de novo*. *Id.* ¶ 51.

¶ 54                              Section 5-4.5-105

¶ 55    We remanded this case for resentencing consistent with *Graham*, 560 U.S. 48, *Buffer*, 2019 IL 122327, and the Code (730 ILCS 5/5-4.5-105 (West 2022)). These cases acknowledge that juveniles like Evans possess transient qualities that mitigate their crimes. Furthermore, the statute

specifies qualities that a court must consider before imposing a sentence. See generally *Buffer*, 2019 IL 122327, ¶ 36 (observing, Illinois legislature enacted section 5-4.5-105, which contains list of mitigating factors "taken from and *** consistent with *Miller*'s discussion of a juvenile defendant's youth and its attendant characteristics").

¶ 56    This appeal does not ask us to reweigh mitigating and aggravating evidence or substitute our judgment for that of the sentencing court. Evans asks whether the sentencing court (i) complied with the statute and (ii) made the record mandated by section 5-4.5-105(b). Where the record affirmatively shows the court proceeded under an incomplete statutory framework, the error is legal, not discretionary, and is reviewed *de novo*. *Johnson*, 2024 IL 130191, ¶ 51.

¶ 57    Although the parties took disparate positions before the sentencing court, they now agree that the statute in effect at resentencing contained 12 mitigating factors. See *People v. Clark*, 2024 IL 127838, ¶ 73 (holding version of section 5-4.5-105(a) in effect at sentencing applied, even though offense occurred before effective date). Under section 5-4.5-105(a), in sentencing, the court must consider:

> "(1) the person's age, impetuosity, and level of maturity at the time of the offense, including the ability to consider risks and consequences of behavior, and the presence of cognitive or developmental disability, or both, if any;
>
> (2) whether the person was subjected to outside pressure, including peer pressure, familial pressure, or negative influences;
>
> (3) the person's family, home environment, educational and social background, including any history of parental neglect, *domestic or sexual violence, sexual exploitation,*

*physical abuse*, or other childhood trauma *including adverse childhood experiences (or ACEs)*;

(4) the person's potential for rehabilitation or evidence of rehabilitation, or both;

(5) the circumstances of the offense;

(6) the person's degree of participation and specific role in the offense, including the level of planning by the defendant before the offense;

(7) whether the person was able to meaningfully participate in his or her defense;

(8) the person's prior juvenile or criminal history;

(9) *the person's involvement in the child welfare system*;

(10) *involvement of the person in the community*;

(11) *if a comprehensive mental health evaluation of the person was conducted by a qualified mental health professional, the outcome of the evaluation*; and

(12) any other information the court finds relevant and reliable, including an expression of remorse, if appropriate. However, if the person, on advice of counsel chooses not to make a statement, the court shall not consider a lack of an expression of remorse as an aggravating factor." (Emphases added.)730 ILCS 5/5-4.5-105(a) (West 2024) (italicized portions became effective January 1, 2024).

The version in effect before Evans's resentencing in 2024, listed the nine non-italicized factors. 730 ILCS 5/5-4.5-105(a) (West 2022).

¶ 58    The version of section 5-4.5-105(a) in effect at Evan's resentencing governed, and nothing in the nine-factor version conflicted with the additional factors (in effect on January 1, 2024). Statutes relating to the same subject must be construed together and harmonized if possible. See 5

ILCS 70/6 (2024) (courts must construe together statutes on same subject matter unless statutes create irreconcilable conflict); see also *People v. Ullrich*, 135 Ill. 2d 477, 483 (1990) ("If the two enactments are capable of being construed so that both may stand, the court should so construe them."). Accordingly, the sentencing court was required to consider—and specify on the record—its consideration of all 12 factors.

¶ 59                                 Omitted Factors

¶ 60    The parties agree that the sentencing court adopted the State's argument and referenced 9 of the 12 factors. As the State notes, the court was "presumably looking at only the nine-factor version, as [it] specifically referred to and individually addressed 'the nine youth factors[.]' " Ordinarily, this affirmative showing would suffice to establish error. See *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 65 (reviewing *de novo* whether defendant affirmatively showed court failed to comply with sentencing statute).

¶ 61    The State contends, however, that the sentencing court "implicitly" considered the missing factors. See, *e.g.*, *Clark*, 2024 IL 127838, ¶ 76 (holding, record as whole showed court considered pertinent mitigation). For example, regarding missing factor nine, the State asserts: "Implicit in considering defendant's family and home environment, specifically 'history of parental neglect' *** is a consideration of defendant's involvement in the child welfare system." The argument fails for three reasons.

¶ 62    First, as Evans explains, the State conflates distinct statutory factors. Generally, "[e]ach word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous." *People v. Clark*, 2019 IL 122891, ¶ 20. As written, factor three concerns a person's upbringing, while factor nine concerns the environment outside of that context.

730 ILCS 5/5-4.5-105(a)(3), (9) (West 2024). Therefore, we decline to collapse factor nine into factor three by conflating the phrases "history of parental neglect" and "child welfare system."

¶ 63    Second, the sentencing court did not comply with section 5-4.5-105(b)'s record-specification requirement, which the State concedes, but only for the missing factors. See *id.* § 5-4.5-105(b) ("The trial judge shall specify on the record its consideration of the factors under subsection (a) of this Section."). Even accepting the State's contention that the parties presented evidence relating to the missing factors, including elements of factor three and factors ten and eleven, the record shows the court failed to "specify on the record" its consideration of those missing factors. *Id.* So contrary to the State's contention, collapsing factors does not satisfy that statutory obligation, which the court appeared to appreciate by specifically referring to each factor by number.

¶ 64    Third, the record reflects that Evans's sentencing memo cited and discussed his involvement in the child welfare system as mitigation under factor nine of the 2024 version of the statute. Yet the sentencing court omitted mentioning this contention in its analysis of the "youth factors." We will not infer implicitly what the sentencing court expressly declined to do. *People v. Gaultney*, 174 Ill. 2d 410, 420 (1996) ("We ordinarily presume that the trial judge knows and follows the law unless the record indicates otherwise.").

¶ 65    Accordingly, we take the sentencing judge at its word when assessing whether it omitted several mitigating factors from its sentencing decision. See *id.* In context, the court's statement—that it considered "the nine youth factors"—demonstrates clear or obvious error. *Johnson*, 2024 IL 130191, ¶¶ 44-48 (finding context demonstrated court committed clear or obvious error at sentencing).

¶ 66                                  Misapplied Factors

¶ 67    Evans contends that the sentencing court considered improper factors. He focuses on factors one, three, four, nine, ten, and eleven, contending the court "rejected the statutory youth mitigation framework." We review this issue *de novo*. See *Hibbler*, 2019 IL App (4th) 160897, ¶ 65 (noting whether court complied with sentencing statute presents question of law reviewed *de novo*).

¶ 68    The statutory framework arises from the United State Supreme Court's decision in *Miller*, 567 U.S. 460, which found unconstitutional a sentencing scheme that mandated life in prison without the possibility of parole for those under the age of 18. *Id.* at 489. The Court emphasized that the fact finder must have the opportunity to consider mitigating factors before imposing the harshest penalty on a juvenile. *Id.* Those factors should reflect consideration of a juvenile's youth and its attendant characteristics. *Id.* at 483.

¶ 69    After *Miller*, the General Assembly enacted section 5-4.5-105(a) (730 ILCS 5/5-4.5-105 (West 2016)), which contains a list of mitigating factors "taken from and *** consistent with *Miller*[ ]." *Buffer*, 2019 IL 122327, ¶ 36. For ease of analysis, we categorize the 12 factors in section 5-4.5-105 into three categories: (i) decision-making capacity, (ii) circumstances of the offense, and (iii) rehabilitative potential. The sentencing court's errors impacted its analysis of (i) decision-making capacity and (iii) rehabilitative potential.

¶ 70                              *Decision-Making Capacity*

¶ 71                              Impetuosity and Maturity

¶ 72    In addressing factor one—Evans's age, impetuosity, and maturity (730 ILCS 5/5-4.5-105(a)(1) (2024))—the sentencing court erred by equating planning with the lack of impetuosity

and maturity. At resentencing, the court found Evans (i) was 17 years old, (ii) knew KRW and her family, (iii) planned the attack, and (iv) was "never diagnosed with any kind of psychiatric or neurological disorder." These findings, however, did not address impetuosity and maturity as the statute uses them. Although the court was free to accept or reject expert opinions, the absence of a formal diagnosis did not relieve it of the statutory obligation to evaluate the evidence bearing on Evans's developmental maturity and decision-making capacity. *People v. Boclair*, 129 Ill. 2d 458, 493 (1989) (noting, "purpose of the aggravation and mitigation phase of the sentencing hearing is to insure that the discretion of the sentencing authority is exercised in an informed manner, based upon the evidence at hand and not on extraneous influences; on reason not caprice").

¶ 73    "Impetuosity" and "maturity" in juvenile sentencing are grounded in "psychology and brain science," highlighting "fundamental differences between juvenile and adult minds." (Internal quotation marks omitted.) *Miller*, 567 U.S. at 471-72. "Impetuosity" refers to the tendency among juveniles to prioritize short-term rewards over longer-term risks, a behavior that typically resolves with maturity. See *id.* Additionally, "maturity," refers to developmental maturity, noting that "adolescent brains are not yet fully mature in regions and systems related to higher-order executive functions." (Internal quotation marks omitted.) *Id* at 472 n.5 (citing Brief for *Amici Curiae* American Psychological Association *et al.* at 4).

¶ 74    The sentencing court's reasoning, which the State echoes on appeal, concentrated on the nature of the offense without considering the science of juvenile brain development as to Evans. Although the court found the crime was premeditated and planned, on remand it should consider Evans's impetuosity and maturity as defined in *Miller* and codified under section 5-4.5-105(a). Planning is expressly addressed under factor six, which concerns a defendant's level of

participation and planning before the offense. It cannot substitute for the separate statutory inquiry under factor one into a juvenile's impetuosity and developmental maturity.

¶ 75                                    Personal History

¶ 76    The sentencing court overlooked factors nine, eleven, and a part of factor three. 730 ILCS 5/5-4.5-105(a)(3), (9), (11) (West 2024). Although it acknowledged in general terms that "no child" should endure Evans's upbringing, it did not specify on the record how the statutory components of factor three—the child welfare system, prior mental health evaluations, and violence and physical abuse—bore on his decision-making at the time of the offense.

¶ 77    The State maintains that the sentencing court "based [Evans's] sentence, in large part, on the seriousness of the offense." Nevertheless, the State has not demonstrated that the sentencing court "implicitly" considered how Evans's many traumas hindered his brain development, making him more susceptible to poor decision-making. The statute requires the sentencing court to make a record demonstrating consideration of each statutory factor, and here the record shows omission of factors nine through eleven. See *id.* § 5-4.5-105(b) ("The trial judge shall specify on the record its consideration of the factors under subsection (a) of this Section."). Again, the sentencing court did not.

¶ 78                                *Rehabilitative Potential*

¶ 79    The sentencing court also erred with regard to factor ten on communal involvement and factor four on rehabilitation. See *id.* § (a)(4), (10). Properly understood, factors ten and four apply to "*Miller*'s central intuition—that children who commit even heinous crimes are capable of change." *Montgomery v. Louisiana*, 577 U.S. 190, 212 (2016).

¶ 80   But the sentencing court focused on Evans's disciplinary infractions from his early years in custody without explaining how it evaluated nearly two decades of progress and good behavior, which included obtaining his GED, taking college courses, positive response to therapy, and working his way from kitchen staff to lawn care. Consequently, the sentencing court failed to conduct the analysis the statute demands.

¶ 81                                   Prong Two

¶ 82   Evans contends that errors affected the "framework" of the resentencing hearing, rendering it an unreliable method for evaluating mitigating and aggravating evidence. See *Johnson*, 2024 IL 130191, ¶ 89. We agree.

¶ 83   Before weighing factors in aggravation and mitigation, the sentencing court stated that Evans's eligibility for parole "removes" his sentence from "the penumbra" of *Miller* and later cases. See Penumbra, Black's Law Dictionary (12th ed. 2024) (noting, in constitutional law, Supreme Court has recognized that Bill of Rights has penumbras containing implied rights). The State first advanced this framing in its resentencing memo, and the court did so at the resentencing hearing.

¶ 84   By focusing on parole eligibility, the State misconstrued section 5-4.5-105(a)'s codification of *Miller*. Indeed, by omitting any citation to or discussion of the statutory mitigating factors under section 5-4.5-105(a) of the Code (730 ILCS 5/5-4.5-105(a) (West 2024)) in its memo, the State left the impression that only supreme court caselaw on *Miller* was pertinent at resentencing.

¶ 85   Contrary to the State's premise, the General Assembly's understanding of *Miller* was central to the court's sentencing decision. See *Buffer*, 2019 IL 122327, ¶ 36 (observing, section 5-

4.5-105(a) contains list of mitigating factors "taken from and *** consistent with *Miller*'s discussion of a juvenile defendant's youth and its attendant characteristics"). Section 5-4.5-105(a) reflects and codifies *Miller*'s insights on youth and its attendant circumstances without regard to offense type or sentence length. See 730 ILCS 5/5-4.5-105 (West 2024) (applying whenever "person commits an offense and the person is under 18 years of age at the time of the commission of the offense"). In other words, the legislature understood the *penumbra* of *Miller* to sweep broadly, extending beyond the refinements of subsequent caselaw.

¶ 86    *Miller* identified several core principles: (i) juveniles have transient qualities that mitigate their crimes, (ii) these traits are not "crime-specific," and (iii) the development of a juvenile must be considered a "relevant mitigating factor of great weight." *Miller*, 567 U.S. at 473, 476. While the supreme court has narrowed the circumstances in which these insights apply, the General Assembly incorporated them comprehensively so they would inform section 5-4.5-105(a)'s many factors in mitigation, again without regard to offense or sentence. See *People v. Reyes*, 2025 IL App (2d) 210423-B, ¶ 41 ("That body decided, after due consideration and debate, to implement the teachings of *Miller* by enacting section 5-4.5-105 of the Code, which lists potential mitigating factors to be considered in addition to the general statutory mitigating and aggravating factors when sentencing juvenile offenders." (Emphasis omitted.)).

¶ 87    At the original sentencing hearing, the trial judge remarked, "I do not know whether this defendant has any rehabilitative potential." That uncertainty underscores the importance of the statutory protections later enacted: sentencing juveniles without the protections of section 5-4.5-105(a) leads to consequences that are "unmeasurable" and a proceeding that "cannot reliably serve its function." See *Sullivan v. Louisiana*, 508 U.S. 275, 281 (1993).

¶ 88    Decades later, we still lack meaningful findings about Evans's rehabilitative potential or decision-making capacity. Proceeding under the State's framing, the sentencing court (i) did not address a significant portion of the statutory factors, (ii) treated the planning of the offense as indicative of a lack of impetuosity and maturity, (iii) emphasized the nature of the offense while giving insufficient consideration to the implications of the science of juvenile brain development for Evans, (iv) gave no weight to Evans's horrific life experiences in its assessment of his decision-making during the offense, and (v) failed to account for the chronology facts indicating a cessation of disciplinary incidents over time and a positive response to treatment.

¶ 89    By misapprehending the relationship between *Miller* and section 5-4.5-105(a), the State urged and the sentencing court adopted a sentencing framework that departed from the governing law. The court did not simply consider an improper factor in aggravation. See *Johnson*, 2024 IL 130191, ¶¶ 86-87. The court failed to perform the essential task we assigned on remand.

¶ 90    And just as a reviewing court will not evaluate the sufficiency of a verdict reached after an erroneous instruction on reasonable doubt (*Sullivan*, 508 U.S. at 281), we will not affirm a 90-year sentence imposed on a juvenile without consideration of the protections afforded by section 5-4.5-105(a). We invoke *Sullivan* by analogy to underscore that when a court proceeds under an incomplete legal framework, the resulting judgment cannot be deemed reliable. See generally *Johnson*, 2024 IL 130191, ¶ 90 (categorizing errors under prong two). The appropriate remedy is to reverse and remand for a new resentencing hearing. See *People v. Williams*, 188 Ill. 2d 365, 369 (1999) ("Where a trial court's exercise of discretion has been frustrated by an erroneous rule of law, appellate review is required to permit the exercise of discretion consistent with the law.").

¶ 91    To be sure, our decision neither reweighs factors nor imposes a sentence. See *People v. Alexander*, 239 Ill. 2d 205, 215 (2010) (reversing judgment of appellate court reducing sentencing and reinstating sentence trial court imposed). Rather, we direct the sentencing court to exercise its discretion within the bounds of the law when resentencing Evans. See *Williams*, 188 Ill. 2d at 369.

¶ 92    Because the sentencing court proceeded under a truncated framework, on remand, it must conduct a new sentencing hearing under the full statutory scheme, weighing all 12 factors, and imposing a sentence consistent with supreme court precedent, this decision, and the Code. See 730 ILCS 5/5-4.5-105 (West 2024).

¶ 93                            Issues Not Addressed

¶ 94    Evans raised several issues that we do not address. Because we resolve this appeal on statutory grounds, we do not reach his constitutional argument. Our supreme court has repeatedly admonished us that "cases should be decided on nonconstitutional grounds whenever possible," with constitutional issues reached "only as a last resort." *In re E.H.*, 224 Ill. 2d 172, 178 (2006).

¶ 95    Regarding the statutory issue, we also do not address Evans's alternative arguments for excusing forfeiture. Because we agree with his contention about prong two, we will not evaluate his argument on prong one. See *Johnson*, 2024 IL 130191, ¶ 92 (suggesting errors "amenable to harmless error analysis" might "not be reviewed under the second prong of the plain error rule"). And because his counsel cited the new version of section 5-4.5-105 in his sentencing memo, we will not explore whether counsel "acted unreasonably by not arguing the statutes *** [the earlier one and the current one] *** should be read together."

¶ 96                                    Reassignment

¶ 97    Lastly, Evans requests that a different judge preside over his resentencing "because the sentencing judge exposed its unwillingness to consider the statutory mitigating sentencing factors." In support, he cites *People v. Serrano*, 2016 IL App (1st) 133493, ¶ 45, and Illinois Supreme Court Rule 615(b) (eff. Jan. 1, 1967). We decline.

¶ 98    Our supreme court overruled *Serrano* "to the extent [that opinion] found that an appellate court may *sua sponte* order reassignment of a case to a different judge on remand for reasons other than bias, the probability of bias, or prejudice on the part of the trial judge in a postconviction proceeding." *People v. Class*, 2025 IL 129695, ¶ 52. Also, the supreme court has allowed leave to appeal in *People v. Morris*, where an appellate court assigned resentencing to a different judge, finding that the original judge had "predetermined" the sentencing decision. *People v. Morris*, 2023 IL App (1st) 220035, ¶¶ 61-64, *appeal allowed*, No. 129992, (Ill. Nov. 26, 2025).

¶ 99    Generally, "judicial rulings almost never constitute a valid basis for a claim of judicial partiality or bias." *Class*, 2025 IL 129695, ¶ 51. But the general rule gives way when the potential for bias arises, like where the record "indicat[es] that the circuit court will fail to correct its legal error or fail to apply the [proper] standard on remand." *Id.*

¶ 100   Our mandate ordered resentencing in accordance with *Graham*, 560 U.S. 48, *Buffer*, 2019 IL 122327, and the Code (730 ILCS 5/5-4.5-105 (West 2022)). Nothing in the record suggests bias on the part of the judge. See *Class*, 2025 IL 129695, ¶ 51 (high degree of favoritism or antagonism supports finding bias). Rather, the errors arose from the State's briefing and argument, defense counsel's failure to object, and the existence of two versions of the statute at the time of resentencing.

¶ 101                                    Disposition

¶ 102    We do not direct the sentencing court to impose a specific sentence; that decision, exercised

within the statutory framework, remains within its discretion.

¶ 103    Reversed and remanded with directions.

¶ 104    JUSTICE GAMRATH, specially concurring:

¶ 105    I concur with the decision to remand for resentencing so that the sentencing court may

specify on the record its consideration of factors nine, ten, and eleven under the current version of

section 5-4.5-105(a) (730 ILCS 5/5-4.5-105(a) (West 2024)). See 730 ILCS 5/5-4.5-105(b) (West

2024) (sentencing court shall specify on the record its consideration of section 5-4.5-105(a)

factors). However, I respectfully disagree with the majority's view that the court erred in its

application of factors one, three, and four.

¶ 106    In addressing factor one, impetuosity and maturity, the sentencing court considered

Evans's age, the fact he acted alone without outside pressure, and that he preplanned the horrific

crime. The court carefully reviewed Dr. Cummins's opinion about Evans's susceptibility to poor

decisions, impulsivity, and rash behaviors, but concluded the exceptionally heinous crime was not

impetuous. It was premeditated, planned, and unprovoked. Evans lied to gain entrance to the

victim's apartment, slyly followed her to the bedroom and raped her in front of her young child,

cut the phone cord so she could not make a call, and tried to kill her in a shockingly brutal manner

to silence her so she could not be a witness against him. These facts go to the core of factor one,

directly relating to Evans's impetuosity and maturity, as outlined in *Miller*.

¶ 107    As for factors three and four, relating to Evans's childhood background and rehabilitation,

I do not think the sentencing court overlooked any evidence. Although the court must specify on

the record its consideration of the sentencing factors (730 ILCS 5/5-4.5-105(b) (West 2024)), it need not explain every piece of mitigating evidence it weighed. We presume the court considered it all. See *People v. Vega*, 2018 IL App (1st) 160619, ¶ 69 (when mitigating evidence is presented, we presume the court considered it absent some indication to the contrary, other than the sentence itself); *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 19 (same).

¶ 108 Additionally, the sentencing court said it did consider everything: "the presentence investigation report; the extensive mitigation report that was submitted on behalf of Mr. Evans; and the testimony of both Mr. Weatherspoon and Dr. Cummins as well; the arguments of counsel; all statutory and nonstatutory factors in aggravation and mitigation, whether specifically mentioned or not; the history and character of the defendant and having due regard for the seriousness of the offense and with the objective of restoring the defendant to useful citizenship." The court acknowledged Evans's young age, horrible upbringing, instability, and trauma. It recognized Evans's progress in prison, noting his successful completion of several programs following a history of numerous major disciplinary infractions in his first decade in prison. The court listened to the defense counsel, thoroughly read Dr. Cummins's report multiple times, and considered her testimony regarding Evans's experience of abuse and neglect, his mother's struggles with alcoholism and mistreatment, as well as his childhood depression and PTSD. After taking everything into account, the court exercised its discretion to impose a sentence that reflected the particular facts and circumstances and the seriousness of Evans's offense. But for the omission of an explicit reference to factors nine, ten, and eleven, I would find no fault with the court's sentencing framework.

***People v. Evans***, **2026 IL App (1st) 241368**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 94-CR-10738; the Hon. Peggy Chiampas, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Ann B. McLennan, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Eileen O'Neill Burke, State's Attorney, of Chicago (John E. Nowak, Erin K. Slattery, and Amy McGowan, Assistant State's Attorneys, of counsel), for the People. |